L., H. & St. L. R. R.·Co. v. Beauchamp.

CASE 8—ACTION TO RECOVER DAMAGES FOR THE KILLING OF A COLT BY
RAILROAD CO.—MARCH 10.

# L., H. & St. L. Railway Co. v. Beauchamp.

APPEAL FROM THE HANCOCK CIRCUIT COURT.

PLEADING—AMENDMENTS—DEPARTURE—ADMISSIONS OF AGENT AS EVI-
DENCE—CATTLE-GUARDS.

Held:   1. In an action to recover damages for the killing of a colt
by the negligent act of the defendant in running its train of cars
over the colt, it was not error to permit the filing of amended
petitions alleging additional acts of negligence as that defendant
maintained its cattle guard in a negligent manner, and that, after
the colt was crippled, defendant wrongfully killed it, though it
was not fatally injured.

2. The declaration of a section foreman, charged merely with the
duty of keeping a cattle guard in repair, that the original con-
struction of the cattle guard was improper, was not admissible
against the principal, not being a part of the res gestae.

3. The term "cattle guard," as employed in Kentucky Statutes, section
1793, means such an appliance as will prevent animals from es-
caping from inclosures in which they are confined over the rail-
road track, and going upon lands of others, adjoining the right
of way; and the mere fact that a cattle guard was not so con-
structed that cattle could pass over it with safety did not author-
ize the submission to the jury of the question of improper con-
struction.

4. It is negligence to permit a cattle guard to be overgrown with
weeds, grass, and other vegetation, so as to prevent its being seen
by live stock.

DAVID R. MURRAY FOR APPELLANT.

1. Admissions or statements made by appellant's section boss the day
after the injury was done are not competent evidence against the
appellant, neither as to the killing of the colt, nor as to the
construction of the cattle guard. Lexington, &c., Mining Co. v.
Webb, 35 S. W., 1117; Tarr v. Kimbrough, 34 S. W., 528; L. & N.
R. R. Co. v. Ellis, 30 S. W., 979.

2. The original petition alleged that the colt was killed by being neg-
ligently run over by the train. An amended petition was filed al-
leging that the colt was killed either by the train running over
it, or by falling into the cattle guard, but plaintiff did not
know which, and another amendment was filed alleging that the

L., H. & St. L. R. R. Co. v. Beauchamp.

colt was not fatally injured by the train or cattle guard, but after being crippled was wrongfully killed by the agent of the railroad company. All these amendments were filed against the objection of the (defendant) appellant and the filing thereof is a reversible error.

SWEENEY, ELLIS & SWEENEY for appellee.

1. The amended petitions do not set up a new cause of action, and the court in its discretion had the right to allow them to be filed.
2. The statement made by the section boss of appellant, who was in charge of the cattle guard, as to its improper construction was competent evidence.

Opinion of the court by JUDGE BURNAM—Reversing.

In the original petition in this action appellee sought to recover damages of appellant for having recklessly, carelessly, and negligently run its engine and train of cars over his colt, by reason of which it was fatally injured, and subsequently killed by the agents of the defendant. By an amended petition appellee alleges "that he was not present when the colt was crippled, but that he had been informed that the defendant company ran its train over and crippled the colt, as alleged in his original petition, and which he believed to be true; but, if mistaken in this, he says that the defendant, at the time the colt was crippled, was maintaining a cattle guard on the line between the field where said colt was being pastured and the land of the adjacent owner, and that the defendant erected, kept, and maintained said cattle guard in an unskillful, careless, and reckless manner, by making a deep hole or pit, and then placing rails or slats over the top thereof so far apart that stock could and did fall into said pit; and that said colt fell into and through said cattle guard and pit, and in that way was crippled, and then killed by defendant company, as alleged in his original petition; that said colt would not and could not have been crippled but

for defendant's gross negligence in constructing said cattle guard, and its carelessness and negligence in maintaining same; that either the colt was crippled by the defendant company in the manner alleged in the original petition or in the manner alleged in the amended petition; one or the other is true, but the plaintiff does not know which." And by a second amended petition appellee alleges "that after the colt was crippled, as alleged in the petition and amended petition, defendant's agent and servant who was in charge of that part of defendant's track where the colt was crippled, and who was duly authorized and empowered by the defendant company, when stock were crippled by trains on its track, when, in the judgment of the company, such stock was fatally injured, to kill the same, pursuant to instructions killed the colt when it was not fatally injured, and when such killing was wrongful." Each and every affirmative allegation of the original and amended petitions affecting its rights was denied by appellant, and it was affirmatively alleged in the answer that the colt was killed at the instance and with the knowledge and consent of plaintiff, and without either instruction or authority from the defendant. These affirmative averments were denied by a reply, and the trial resulted in a verdict and judgment in favor of appellee.

A number of alleged errors occurring on the trial are relied on for reversal. First, it is insisted that the court erred to the prejudice of the defendant in permitting appellee to file each of the amended petitions, to which appellant at the time objected and excepted; and it is especially insisted that the second amended petition sets up a distinct and new cause of action. The gist of the action upon which recovery is sought is for the death of

plaintiff's colt, which, it is alleged, was occasioned by the negligent and wrongful acts of appellant's agents and em· ployes. The cause which is the basis of the action relied on in the pleadings is the same, the amendments only alleging different acts of negligence which occasioned the injury. The amended petitions do not constitute a new cause of action, and the court properly allowed them to be filed.

It is insisted that the court erred in admitting as evidence in chief statements made by J. D. Perry, section foreman, as to the condition and construction of the cattle guard, which were prejudicial to defendant, and which were objected and accepted to at the time. Admissions made by an agent while acting within the scope of his authority, and within the legitimate province of his delegated powers, are, by the universal rules of evidence, admissible as against the principal, not as admissions or declarations merely, but as parts of the *res gestae;* hence only such as accompany the transactions in which the agent acted can be proven. There is no testimony that the section boss was charged with the construction of this cattle guard, nor that it was out of repair. The fault with it, if any, was that of original construction, and the statements of the section boss as to whether it was properly constructed, made out of court, and to a third party, were at best mere opinions or conclusions of his, and could not be introduced as evidence in chief against appellant, and the court erred in admitting it.

Another ground relied on for reversal is that the court erred in refusing to give a peremptory instruction to find for defendant, as it is insisted that there was no testimony which conduced to show that the injury to appellee's colt was occasioned by any negligent or defective con-

struction of the cattle guard itself.  The fault in the cattle guard relied on in the amended petition is that "the ties were placed so far apart that stock could and did fall between them, and that appellee's colt fell into and through said cattle guard and pit, and in that way was crippled, and then killed by defendant company as alleged," There is no proof in the record that the train ever struck the colt, and the only proof as to the negligent construction of the cattle guard is that of appellee and the witnesses Combs and Boutcher.  Appellee was asked the following questions:  "Q. Was the cattle guard skillfully and properly built?  A. No, sir; not like they are in my neighborhood.  Q.  Do you know how a cattle guard ought to be built so as to make it safe for stock?  A. Yes sir.  Q. How was this one constructed?  A. Had a pit dug there, and cross-ties, and planked up.  The first cross-tie was six inches from the plank at the end of the pit.  Q. How should it have been built?  A. The cross-tie should have been against the plank.  It was from four to six inches away from the plank.  Q. About what part of the cattle guard did the colt fall into?  A. It was near the center where the colt fell in.  Q. How long was the cattle guard?  A. About ten or twelve feet."  The witness Combs testified that the cattle guard was not properly constructed, and, being called upon for particulars, answered:  "The first cross-tie on the side where the colt fell into the pit should have been laid over and upon the perpendicular plank that walled the pit, and the next tie should have been placed from fifteen to eighteen inches from the first tie.  If the cattle guard had been built in this way, the colt would not have fallen into it, or, if it had, it would not have broken its leg, for there would have been sufficient room to have gotten it out; but, as it was, there was

no room, and its leg was necessarily broken." While the witness Boutcher testified that he thought the cattle guard was improperly constructed because "the first cross-tie was placed too close to the end of the pit;" that, "if the opening had been wider at that point between the boxing and the first cross-tie, the colt would have had more room for play." The term "cattle guard," as employed in section 1793 of the Kentucky Statutes, means such an appliance as will prevent animals from escaping from inclosures in which they are confined over the railroad track and going upon lands of others adjoining the right of way, and any neglect or failure on the part of the railroad to keep them in such a condition as will effect this purpose renders it liable for any injuries that may result therefrom. No particular form of appliance is prescribed by the statute, but it certainly can not be contended that they should be so constructed that cattle could pass over them with safety. This would defeat the very purpose of their requirement. While it appears from the evidence that there are a variety of appliances of this character used by the different railroads, yet it appears that this particular appliance, is the one universally used on this road, and we are of the opinion that the testimony as to improper construction did not authorize the submission of the question to the jury.

In the progress of the trial, appellee offered to prove by a number of witnesses that the defendant had allowed a large amount of grass and weeds to grow over, through, and around this cattle guard, until it was completely hidden from view, and that it could only be discovered, on this account, when you came very close to it. It was the duty of the defendant to have maintained the cattle guard in such condition as to attract the notice of live stock.

To have permitted it to be overgrown· with weeds, grass, and other vegetation, so as to prevent its being seen by live stock, was negligence. This testimony was clearly competent, and the court erred in excluding it. For reasons indicated herein, the judgment is reversed, and cause remanded for a new trial consistent with this opinion.