CASE 2.—ACTION BY T. E. RUSSELL AGAINST THE NASH-
VILLE, CHATTANOOGA & ST. LOUIS RAILWAY CO.,
FOR KILLING STOCK.—May 12.

# Nashville C. & St. L. Ry. Co. v. Russell

Appeal from Marshall Circuit Court.

W. M. REED, Circuit Judge.

Judgment for plaintiff, defendant appeals—Affirmed.

1.  Railroads—"Cattle Guards"—Sufficiency—Statutory Provisions
    —Construction.—The fact that a cattle guard was the same
    as that in general use on defendant's railroad and on other
    roads is not conclusive evidence that it was a sufficient cattle
    guard within the meaning of Ky. St. 1903, section 1793, provid-
    ing that all corporations and persons owning and operating
    railroads shall erect and maintain cattle guards at all terminal
    points, and fences constructed along their lines, for, though
    the statute does not prescribe the character of cattle guards
    to be used, it is the manifest intention that they should be
    reasonably sufficient to prevent cattle from crossing, for
    otherwise they would be of little or no service, and while
    cattle guards need not be so constructed that cattle cannot
    pass over them, the company should at least exercise ordi-
    nary care to provide and maintain guards reasonably sufficient
    for the purpose intended, and the mere erection of cattle
    guards, however sufficient they may be, does not meet the
    demands of the statute requiring that they shall be maintained
    as well as erected.
2.  Same—Evidence—Admissibility.—While the sufficiency of a
    cattle guard cannot be conclusively determined by either the
    opinion of railroad experts or farmers owning land adjoining
    a railroad, evidence is admissible to show that a cattle guard
    is one in general use by well managed railroads, and that it
    is of the most approved make and construction, and it is
    equally competent for the person attacking its sufficiency to

Nashville C. & St. L. Ry. Co. v. Russell.

· show that cattle had passed over it, as showing that it does not answer the purpose for which it was intended.

3. Same—Questions for Jury.—Whether a cattle guard was reasonably sufficient to prevent cattle from crossing it, held, under the evidence, for the jury.

4. Appeal—Review—Presumptions—Propriety of Ruling of Trial Court—Discharge of Jurors.—Where a court discharged jurors on plaintiff's motion after the jury had been accepted, and while defendant's counsel was stating the case, but the record did not show why the trial judge took the action, it will be assumed on appeal that he had sufficient reasons for his ruling.

5. Same—Harmless Error—Presumption as to Prejudice to Appellant.—Where it does not appear from the record on appeal that appellant was prejudiced by the ruling of the court in discharging certain jurors after the jury had been accepted, and while defendant's counsel was stating the case, prejudice will not be assumed by the court on appeal.

WHEELER, HUGHES & BERRY for appellant.

POINTS AND AUTHORITIES.

1. It was error in the court to permit the appellee to challenge and dismiss from the jury two of the members thereof after the jury had been sworn, and to place two other men on the jury in their places.

2. A peremptory instruction should have been given.  (L. H. & St. L. Ry. v. Beauchamp, 21 Ky. Law Rep., 1476; Kentucky Statutes, 1793.)

OLIVER, OLIVER & McGREGOR for appellee.

LEGAL QUESTIONS PRESENTED AND AUTHORITIES CITED.

1. The cattle guard required by section 1793 Kentucky Statutes, is such an appliance as will prevent animals from passing over same. Where the statute fails to prescribe how such cattle guards shall be constructed, a compliance with the statutory provisions is by constructing and maintaining such a device as meets the requirements of the common law—an appliance that will effectually prevent stock from crossing over same.  (Kentucky Statutes, 1793; Thompson on Negligence, 2d Ed., v. 2; Sec. 2079, 2082, p. 720; L. H. & St. L. Ry. v. Beauchamp, 21 Ky. Law Rep., 1476; Illinois Central R. R. Co. v. Stanley, 96 S. W. Reporter, 846.)

2. Peremptory instructions should never be given to find for defendant, except in cases where the evidence of plaintiff taken as true, and every inference that is or may be fairly deducible from it, shows that plaintiff has no right to recover. (Shay v. R. & L. T. P. Co., 1 Bush, 108; Burford v. L. & N. R. R. Co., 82 Ky., 286; Baumeister & Bro., &c. v. Markam, 19 Ky. Law Rep., 311; U. S. of Shakers v. Underwood, 11 Bush, 277; L. & N. R. R. Co. v. Howard, 82 Ky., 215.)

### DISCHARGE OF JURORS.

3. An immaterial irregularity in the proceedings which do not prevent a fair and impartial trial is not such error as will authorize a reversal of the case.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The principal questions in this case are whether or not the appellant company erected and maintained at a public road crossing on its line of railway at a point near Hardin in Marshall county, Ky., a sufficient cattle guard within the meaning of the statute to entitle it to a verdict under direction of the court, and whether or not the trial court properly instructed the jury. The action was brought to recover damages for the value of stock killed by one of appellant's trains, and upon a trial there was a verdict and judgment for appellee.

The stock killed had passed over a cattle guard, and were on the right of way at a point where they could not escape, and it is not contended that the trainmen were guilty of any negligence; so that the entire case turns upon the proposition whether or not the cattle guard was erected and maintained in the manner required by the statute, and reasonably sufficient to prevent stock from going from the public road on to the right of way where they were killed.

The cattle guard in question was eight feet square, made of iron plates attached together and placed on the ties, and on the surface of the iron at spaces of a few inches apart there were sharp pointed projections also made of iron, intended to be so arranged that an animal in walking across would necessarily step on the pointed iron, thereby hurting or injuring its feet. This particular cattle guard is known as "Cook's Standard," and is in general use on the line of appellant's railroad, and is used by other railroad companies, and was shown by the evidence of witnesses for appellant to be one of the best and most approved styles of cattle guards in general use. There was evidence for appellee tending to show that a number of the sharp projecting points had been bent, and that the ties upon which the iron plates was laid were embedded in the ground, so that the iron was almost level with the top of the earth, and that cattle and horses habitually passed over it. As all of the evidence introduced on the trial was to the effect that the cattle guard was a practical one, of approved pattern and in general use, appellants insists that it fully complied with the statute, although cattle may have walked across it; the argument being that when a cattle guard, the utility of which has been tested and approved by railroads, is erected and maintained, the company has discharged the full measure of its duty, and cannot be held liable, although it may not be sufficient to prevent stock from passing over it.

It is not necessary nor indeed proper that we should express an opinion as to the kind of cattle guard that should be erected and maintained. But the fact that the cattle guard was the same as that in general use on the line of appellant's railroad, and also on other roads, is not conclusive evidence that

it was a sufficient cattle guard within the meaning of section 1793 of the Kentucky Statutes, which reads in part as follows: "All corporations and persons owning or controlling and operating railroads as aforesaid shall erect and maintain cattle guards 'at all terminal points of fences constructed along their lines." This statute does not undertake to prescribe the character of cattle guards that shall be used, but manifestly the intention was that it should be such a one as is reasonably sufficient to prevent cattle from crossing it, otherwise it would be of little or no service. Nor does the erection of cattle guards, however sufficient they may be, meet the demands of the statute, which declares that they shall not only be erected but maintained. It is therefore as much the duty to maintain them in proper condition for the purpose intended as it is to erect them. Whether or not a cattle guard comes up to this requirement is a question of fact that cannot be conclusively determined by either the opinion of railroad experts or farmers who own land adjoining the railroad, although it is admissible for the railroad company to prove that the cattle guard is one in general use by well-managed railroads, and that it is of the most approved make and construction, and, on the other hand, it is equally competent for the person who is attacking its sufficiency to show that cattle have passed over it, for the purpose of illustrating that it does not answer the purpose for which it was intended. Each case must be adjudged by the particular facts disclosed by the evidence, and under the facts shown by this record the trial court properly refused the request of appellant for a peremptory instruction in its behalf. Chicago R. Co. v. Bryant, 29 Ill. App. 17; St. Louis R. Co. v. Busick, 74 Ark. 589, 86 S. W. 674; Elliott

on Railroads, section 1198; Smead v. Lake Shore R. Co., 58 Mich. 200, 24 N. W. 761; Pennsylvania Co. v. Newby, 164 Ind. 109, 72 N. E. 1043.

In Louisville, H. & St. L. R. Co. v. Beauchamp, 108 Ky. 47, 55 S. W. 716, 21 Ky. Law Rep. 1476, this court said: "The term 'cattle guard' as employed in section 1793 of the Kentucky statutes means such an appliance as will prevent animals from escaping from inclosures in which they are confined over the railroad track and going upon land of others adjoining the right of way; and any neglect or failure on the part of the railroad to keep them in such a condition as will effect this purpose renders it liable for any injuries that may result therefrom. No particular form of appliance is prescribed by the statute; but it certainly cannot be contended that they should be so constructed that cattle could pass over them with safety. This would defeat the very purpose of their requirement."

If a cattle guard is not reasonably sufficient to prevent cattle from going across it, then it is not such a guard as the statute contemplates, although it may be in general use by railroads. This does not mean that a cattle guard must be so constructed as that under no condition cattle can pass over it, or that it must afford absolute or perfect protection against trespassing or wandering stock. It would not be reasonable to demand of railroad companies this high measure of care, but they should at least exercise ordinary care to provide and maintain guards reasonably sufficient for the purpose intended. And we do not know a better test than can be applied to determine the statutory sufficiency of a guard than to submit under competent evidence the question of its

reasonable sufficiency to a jury, and this the court did in the following instructions:

"(1) It was the duty of the defendant at the time and place complained of by the plaintiff to exercise ordinary care to keep and maintain its cattle guards in reasonably safe condition to keep stock from straying from the public road over the same onto its inclosed right of way, and if you shall believe from the evidence in this case that defendant failed to exercise such care, and that said cattle guard was insufficient to prevent stock from straying over same and on its inclosed right of way, and that by reason thereof plaintiff's horses did stray from the public highway over same and on to the inclosed right of way of defendant, and was there struck by one of defendant's engines and trains, then the law in this case is for the plaintiff, and you will find for him damages for killing the horse sued for not exceeding $175, and damages for the mare sued for not exceeding $135, and damages for the mule sued for not exceeding $60, and in all not exceeding $370. But, unless you shall so believe from the evidence in this case, then the law is for the defendant, and you will so find.

"(2) The term 'ordinary care' as used in instruction No. 1 herein means such care as ordinarily careful and prudent persons are accustomed to use in their own affairs, and when engaged in a like business and under like or similar circumstances of this case, and 'negligence' means the failure to exercise such care."

The point is further made that the court erred in discharging two of the jurors on motion of the plaintiff below after the jury had been accepted, and while counsel for defendant was stating the case. The

record does not disclose why the trial judge took this action, nor does it appear that the rights of appellant were in any wise prejudiced by it. In the absence of any showing to the contrary, we must assume that the trial judge had sufficient reasons for his ruling. At any rate there is nothing in the record to indicate that appellant was prejudiced by the ruling, and we are not disposed to assume that it was.

Wherefore the judgment of the lower court is affirmed.