### Beauchamp, et al. v. Snider, County Judge, et al.

(Decided May 16, 1916.)

### Appeal from Spencer Circuit Court.

1. Officers—Increase or Reduction of Compensation.—A county school superintendent is not entitled to collect any salary except that allowed to him by the fiscal court, which can neither be increased or decreased after his election.

2. Schools and School Districts—Appropriation Out of School Fund for County Superintendent.—The county board of education has no right to appropriate any of the school fund to the county school superintendent in payment of salary, nor can the county school superintendent discharge the duties of school supervisor and be paid by the county board of education therefor, nor can the salary of the county superintendent be increased in this manner. The county board of education is vested with sound discretion in the matter of increasing and paying expenses of the county school superintendent, or in making the school system of the county more efficient. But this discretion must not be abused as it is not an arbitrary one, and when this discretion has been abused, the courts upon proper application will correct it.

3. Schools and School Districts—Clerical Assistance to Superintendent—Board of Education.—If the clerical work of the county school superintendent is so large or heavy as that he is unable to do it and perform other duties of his office, the board of education may provide clerical assistance for the superintendent to use in his office, and the board may further provide for reasonable expenses of the superintendent when in the actual discharge of the duties of his office, but these expenses must be for services rendered in the county, as must also those allowed and paid for rendering the school more efficient; and in every case, the expenses must be passed on and agreed to in advance by the board of education.

4. Schools and School Districts—Assistant School Superintendent Unauthorized.—There is no such officer as assistant county school superintendent and no one is authorized to employ any such, or to pay to him any salary; nor can the county school superintendent charge the school fund with the use of his own horse and vehicle in discharging the duties of his office.

R. C. CHERRY, KELLEY & KELLEY, MARK BEAUCHAM, JOHN S. KELLEY and SAMUEL K. BAIRD for appellants.

JOHN SPEED, L. W. ROSS and RALPH GILBERT for appellees.

Opinion of the Court by Judge Thomas.—Affirming.

The appellant, Katie B. Beauchamp, is the county school superintendent of Spencer county, having been elected to that office at the regular election in 1913. She held the office at the time of the election filling out an unexpired term. For the term for which she was elected in 1913, the fiscal court fixed her salary at the minimum required by law, $600.00. She was being paid while filling out the unexpired term, only $450.00, but the school law was afterwards amended so as to make the minimum salary of the county school superintendent $600.00. Before the election in 1913, and while appellant was county school superintendent for the county, the board of education, of which she is a member and ex-officio chairman, endeavored by a resolution entered upon its records to supplement the salary of the county school superintendent so as to make it, with the allowance made by the fiscal court, amount to the sum of $1,000.00. The resolution, or order, furthermore provided that if the appellant should be elected at the November, 1913, election, to that office, her salary would be supplemented by the board of education so as to make it amount to as much as $1,200.00, including her salary as fixed by the fiscal court. It was expressly stated in the order, that out of these sums the

superintendent should pay her expenses while in the discharge of official duties.

During the fiscal years, from July 1, 1913, to June 30, 1914, pursuant to this resolution, the board of education issued its vouchers to appellant for various items aggregating the sum of $518.02. In this amount are included vouchers amounting to $450.00, which were issued to her, as stated in the vouchers, in payment of salary. The remaining $68.02 that was paid to her during that time was in the way of reimbursing her for what she claimed to have been legitimate expenses, which she had paid as county school superintendent, and for which she asked and obtained credit as treasurer of the board. When she offered to make settlement with the county judge, as required by section 4409, Kentucky Statutes, there was an objection made to the entire sum of $518.02, which had been paid to her by the board of education, as stated, and there was also objections to items which she had paid to other parties, but which are not involved in this suit. The appellant declined to settle without being allowed the credits, whereupon the county board of education was notified by the county judge and fiscal court to institute proceedings to recover from the appellant all of the items objected to, but particularly the sums that had been paid to her aggregating $518.02, as stated. The board of education declined to do this, whereupon the fiscal court, in conjunction with some taxpayers of the county, instituted this suit against the appellant and the members of the board of education to recover from them the $518.02. This suit resulted in a judgment in favor of the plaintiffs against the appellant alone for the sum of $486.03. She has filed the transcript of the record in this court, and entered motion that she be granted an appeal from the judgment.

Upon the trial it developed that sometime in May, 1914, and after all of the vouchers issued by the board of education to the appellant for salary had been given, it was discovered by the members of the board that it had no right in law to pay the superintendent anything by way of salary, and the vouchers which had been made to read in payment of "salary," were changed so as to read in payment of "expenses." It is but right and proper to say, however, that there was nothing clandestine about this on the part of the superintendent, because she was ordered to make these changes by the directions of

the board of education. When it was made manifest that the appellant could only retain this money, if at all, upon the ground that it was necessary for expenses, she then prepared and relied upon, at the trial, an itemized list of what she claims were and are legitimate expenses. It is perfectly clear that the board of education could not in any manner allow, or order paid to the appellant, anything in the way of salary. The law expressly provides that the only salary which the superintendent is entitled to is that fixed by the fiscal court, and this can be neither increased or diminished, after his election or appointment to the office, at any time during the term. Constitution of Kentucky, sections 161 and 235. If then the appellant can be permitted to withhold any part of the sum sued for, it must be upon the ground, not only that it was paid by the board of education as legitimate expenses, which it is authorized to pay, but it must further appear that such expenses were incurred and contracted in the manner which the board, under the law, is authorized to incur and contract or direct to be paid. The only authority relied upon, and indeed all that exists, authorizing the county board of education to pay legitimate expenses of the county superintendent, is found in subsections 6 and 7 of section 4399 of the Kentucky Statutes, 1915 edition. In subsection 6, it is provided:

"The county board of education shall have power to pay the necessary expenses of the county superintendent and the said supervisors of rural schools while in the discharge of official duties."

In subsection 7, it is provided, that:

"The county board of education shall have power to place into one common school fund, the State fund received from the State Treasurer as is now provided by law and the fund raised in the county by tax levy and distribute said common school fund in the county for the purpose of erecting and equipping school buildings and in the payment of teachers and of such other expenses as are necessary in making an efficient system of schools in the county."

Under these provisions there can be no doubt but that the county board of education is vested with power, in the exercise of a reasonable discretion, to allow and pay the actual expenses of the county superintendent necessarily incurred in the proper discharge of his official duties. And within the same limitations, it is authorized

and empowered to order and pay such expenses which the board may determine, in the exercise of a reasonable discretion, to be necessary "in making an efficient system of schools in the county."

The fundamental purpose of the legislature in enacting the public school laws of the State, and in the providing for the collection of a fund to carry on the school work, is to provide the means whereby the children of the State may have an opportunity to receive, at least, the rudiments of an education. The officers provided by the school law are but agents whose duties are to, as economically as possible, carry out the purposes of the law in the administration of the school fund. The interest of the children is the paramount one, and the actions and powers of the officers provided by the law, should be so shaped and exercised as to have this paramount interest constantly in view. This fundamental purpose, as evinced by the clear policy of the law, is the anchor around which their official discretionary actions should revolve, and no incentive or construction of the law by this court, should be offered or given which might impair their vigilance in this regard. They are but ministerial officers and when given discretion by the statute, it is not to be construed as an arbitrary, but only a sound and reasonable one, and so long as such discretion is not abused and is reasonably exercised for the accomplishment of the purpose in view, it will not be interfered with by the courts. Hence, it is stated in the case of Fiscal Court of Logan County v. Board of Education of Logan County, 138 Ky. 98, that:

"The statute was intended to, and does, invest the board of education with a large discretion in the expenditure of the funds levied for the benefit of the schools, and so long as this discretion is not abused, or is reasonably exercised, the courts will not interfere with it."

On the contrary, however, if this discretion should be abused, or should not be reasonably exercised, either in the character of expenses, or in the mode or method by which they should be allowed, the courts will interfere upon proper application.

As showing that the legislature was influenced by the views which we have just expressed, reference may be made to section 4409 and subsection 13 of 4426a of the Kentucky Statutes. In the first section just referred to, the county superintendent in making settlement with

the county judge, is required to show, not only all the sums received since the date of the last settlement, but likewise "a full statement of all such sums paid to him, for what, to whom, and when paid." In the subsection of the last section referred to, it is provided that the county superintendent shall keep an accurate account of all receipts and disbursements, and "shall report the same in detail to the county board as often as they may require and annually to the fiscal court of the county on the days specified by that court for receiving said report. The books and records of the county board shall be open for the inspection of any citizen of the county." It is further provided in subsection 9 of the last section referred to, that: "No fund shall be paid out except on the order of the county board, signed by the chairman and countersigned by the secretary."

These provisions manifest a purpose on the part of the legislature that the acts of the county superintendent, as well as the board of education, shall be kept so that any citizen who may desire to question their accuracy, or for other purposes, may have access to them. It cannot be imagined that it was intended by the legislature that the right of inspections of the books of the board of education by the citizens was intended only to gratify his curiosity. On the contrary, the purpose was that such inspection was given for revisory purposes, and if the discretion given to the board in the incurring of expenses had been abused, its actions in so doing might be reviewed, and improper expenditures collected, either from the board or the person to whom they had been paid, and the sums so collected turned back into the school fund.

Having said this much, it becomes necessary to determine the nature of the expenses which the board, in its discretion, may allow and pay either to the superintendent, under subsection 6 of section 4399, or, "in making an efficient system of schools in the county," as provided in subsection 7 of the same section. Having due regard for the principles herein advanced, and keeping in mind the chief object of the law; we conclude, that no expenses should be allowed to the superintendent personally, which are alleged to have been incurred by him in the discharge of his official duties, except those actually and necessarily incurred for that purpose; and they should be limited to expenses incurred in the county, and only while the superintendent is actually at work in

the discharge of his official duties. The time expended by him as well as expenses incurred, should be measured by the reasonable necessities of the case, and what experience shows to be required in the discharge of such duties.

As to expenses which the board is permitted to pay, under subsection 7, *supra,* they should be safeguarded by the same rules. Many things might be imagined to, in a remote way, make the school system of the county more efficient; for instance, that the school trustees of the county be highly educated men, and the same as to the members of the board. It would even serve to advance more rapidly the pupil if its parents were sufficiently educated to assist in teaching and instructing it when not in school, and it would, perhaps also, at least according to the views of some, assist to have well equipped base ball parks and golf links for the purpose of affording proper recreation and physical development. It might also be regarded by some as essential to the more efficient development of the schools, that each child be neatly and tidily dressed and that none shall excel others in this particular, but all be placed upon a par in the matter of dress. But, manifestly, even though it be conceded that in some possible way these things might subserve a useful purpose in the school, the board would be wholly unauthorized to expend any of the money for such purposes.

Again, in making the expense which it is allowed to make, the board should not delegate this power, either directly or indirectly to another, not even the superintendent. If it should pay a bill which had been incurred by the superintendent, and represented to it by him to be for legitimate expenses, and which had not been previously authorized and allowed by it, this would, in a way, be substituting the discretion of the superintendent for that of the board. It is a known fact, learned from experience and observation, that bodies of men of the character of the board of education, would, with much less hesitation, allow and pay a bill to another after he had already contracted it and paid for it, than it would itself contract it at the beginning. This is because of an inclination upon the part of the members to avoid antagonisms, conflicts, and possible breaches, which, rather than incur, the payment is made. We are convinced that it was not the intention of the lawmakers to permit the board of education to incur, or pay, the expenses which they are permitted to do in any such way.

And, furthermore, if it should do so, it could be detected by the records which it is required to keep and corrected in the manner pointed out by the law. It is apparent that in the matter of incurring and allowing expenses, the discretion of the members of the board should be consulted. This can only be done by the board authorizing the particular item of expense after its propriety shall have been determined and the amount fixed by the board before the expense has been incurred, and it should state the purpose for which the expense is to be incurred and the person to whom it is to be paid. The expense account which it is required to keep on its records should show these matters. It might in this way allow a reasonable sum to the superintendent for his expenses in the discharge of the official duties of his office, but these should be measured by the considerations we have herein expressed. Expenses allowed by the board in any other way than we have stated, are improperly allowed, and the one to whom they are paid should not be permitted to either take credit for them, or to retain them. In other words, we mean to say that expenses allowed by the board and which it may direct to be paid out of the school fund must originate with it, and the advisability of the allowance, as well as the amount thereof, should be the result of its deliberation. Guided by these rules, let us examine the matters involved here and see if they measure up to the requirements we have announced.

First, as we have seen in an earlier part of this opinion, $450.00 of the sum involved, was paid to the appellant as salary. That this was wrongfully paid as such, there can be but one opinion. None of this amount was subsequently turned back to the board and afterwards allowed as expenses to appellant. On the contrary, it was permitted to remain in her hands, and which sum she holds now. We also fail to find that any of the other items composing the amount of the judgment were allowed in the way and manner herein pointed out. For these reasons, if no other, the judgment would have to be affirmed. However, we will consider three of the items composing the amount, because of the public nature of the questions involved.

After it was learned that appellant could not retain any of this money as salary, she, with the consent of the board, attempted to hold it as expenses, which she

claimed to have paid. The three largest items of this so-called expense are as follows: Livery bill for a horse and buggy eighty days, $170.00; office assistant, $200.00; and $31.65 expenses of appellant in attending the sessions of the Kentucky Educational Association at Louisville; and, membership fees in such association for each of the trustees of the county, these fees being one dollar each. We have already considered and shown that this last item cannot be allowed for two reasons, they being; that the interest to the schools would be too remote, and the expense incurred was not done by the superintendent in the county. As to the second item of $200.00 for the office assistant, it is perfectly clear that there is no provision of law for it. The only place in the statute where the word "assistant" is used in connection with the office of the county school superintendent, is in subsection 5 of section 4399 of the Kentucky Statutes. The language used is:

"The fiscal court shall furnish the county superintendent with a suitable office, free of charge, large enough to accommodate the county teachers' library and the assistants employed in his office."

This cannot be construed as providing for an assistant county superintendent of schools. It is a well known fact that in many counties of the State, large in area and thickly populated, the clerical work imposed by the law on the county superintendent might be more than he could attend to, and discharge the other duties of his office. With this in view, it was the intention of the legislature to provide a means by which the board of education could relieve the superintendent as occasion demanded by furnishing to him clerical assistance; but when necessary, it is the duty of the board to employ such assistance to the superintendent, and to agree before hand upon his compensation, and his duties should be clerical only. But it is insisted by appellant that she is entitled to retain this $200.00 because she earned it by discharging the duties of a supervisor of rural schools, provision for which is made by subsection 6 of section 4399 of the Statutes. To this contention, we cannot agree. A reference to that statute will show that the supervisor is under the direction of the superintendent, and that a part of the duties of the former, are "to act as substitute teacher under the direction of the superintendent." It is, therefore, an independent and separate position from that of

county superintendent, and the two cannot be united into one person, for it would be manifestly impossible for the superintendent, as such, to direct and control himself as supervisor. Moreover, it is provided by the statute (subsection 2, section 4399), that the superintendent shall not be employed as teacher, in a public or private school, and this would disqualify him from filling the position of supervisor, as teaching is one of the duties of the latter.

In regard to the item of livery bill, it is shown that the appellant used her own horse and a buggy borrowed from her brother. It would seem that but little need be said to show that the superintendent could not use, and charge for, his own conveyance. He is expressly forbidden by section 4442 of the statutes from becoming interested in any way in any contract for the building or repairing of school houses, and is also forbidden by section 4416 from purchasing any teacher's claim, or to act as agent for the sale of any text book. There are many places in the statute where officers, trusted with the performance of public duties, are forbidden in any way from being personally interested in any contract which may be made in behalf of the public by them as such officer. All this is for the purpose of removing from the officer any temptation which might prevent him from driving the best bargain in behalf of the public, and is but a recognition of that frailty in humanity to place self-interest above all things else. The disposition to do this has long been recognized, and is most pointedly expressed by the poet, when he said:

"But, Och! mankind are unco weak,
An' little to be trusted;
When self the wavering balance shake,
'Tis rarely right adjusted."

Officers should not thus be permitted to contract with themselves as individuals, although it might be urged as it is here, that the public sustained no financial loss by reason thereof. Still, the law can not set aside a wholesome rule of public policy to make an exception of an individual case. It is better that the rule should be observed in every instance than have its application to thus be rendered uncertain.

It is insisted by appellant, however, that the board of education issued its warrants to her, and that under

the doctrine laid down in the case of Harrison v. Logan County, 129 Ky. 48, she cannot be sued by the appellees. Her counsel altogether misinterpret that case. It was a suit against the county treasurer to recover from him the amounts of warrants which had been issued by the fiscal court and which he had paid. They had been issued to third parties and paid to them. None of the sums sought to be recovered had been paid to the treasurer himself. That case held, that, inasmuch as the treasurer was not aware of the illegality of the claims for which the warrants were issued, and he paid them in good faith, he could not be held liable. The payments had been made upon orders of the court and he had a right to rely thereon. It is stated in the opinion that ''he was not a member of that court, but only an agent of it.'' The facts are entirely different here. The appellant is not only a member of the board of education which issued the warrants for the money in controversy, but they are all paid to, and collected by her.

The motion for the appeal is sustained, the appeal granted, and the judgment is affirmed.