Heman H. McGUIRE, Appellant,

v.

Roy HAMMOND et al., Appellees.

W. E. STEVENS, d/b/a East End
Motor Sales, Appellant,

v.

Roy HAMMOND et al., Appellees.

W. L. GEARHART, Appellant,

v.

Roy HAMMOND et al., Appellees.

Court of Appeals of Kentucky.

July 1, 1966.

H. R. Wilhoit, Grayson, for appellant McGuire.

W. H. Counts, Olive Hill, for appellant Stevens.

Ora F. Duval, Olive Hill, for appellant Gearhart.

Thomas P. Bell, Fowler, Rouse, Measle & Bell, John Y. Brown, Lexington, for appellees.

DAVIS, Commissioner.

Three separate appeals have been consolidated and will be disposed of in this opinion. The litigation before us arose from a taxpayers' suit instituted against numerous defendants, including the members of the Board of Education of Carter County. The complaint and amendments to it presented numerous charges of illegal expenditures of school funds by the Board of Education, and sought recoupment of the alleged illegal expenditures in behalf of the Board. One of the defendants in the action was appellant Heman H. McGuire, then superintendent of the Board of Education of Carter County. The special judge who tried the case heard the evidence without the intervention of a jury, and dismissed most of the claims which had been asserted. Judgments in substantial sums were awarded against the appellants on various facets of the case. These appeals challenge the judgments on several grounds which we shall discuss without first enumerating them.

■ At the outset of the case the appellants moved that the complaint be dismissed for its failure to allege that prior demand had been made of the Board of Education to prosecute the claims. An amended complaint was filed in which it was admitted that no prior demand for suit had been made, but in which it was asserted that such a demand would have been futile. The trial judge heard evidence touching the question of the futility of such a demand and concluded that the demand would have been futile. Our review of the voluminous record convinces us that the trial court was correct in this determination. It is apparent from the record that the Board was substantially under the domination of the appellant, McGuire, the superintendent. Inasmuch as McGuire was charged with deliberate misuse of his position for his own personal profit, it seems clear that a demand for the Board to institute the suit would have been unavailing. Farler v. Perry County Bd. of Ed., Ky., 355 S.W.2d 659, is urged by appellants as dispositive of this point in their favor. In Farler we observed that since the claims sued on included actions against persons and firms other than members of the Board, it could not be presumed that the Board would have declined to file suit. In this case the complaint sought recovery against persons other than Board members, but we have no matter of presumption that the Board would not sue. There is substantial evidence, supported by clear inferences, that the Board would not have undertaken any portion of the litigation. We hold that there is no merit in this assignment of error.

■ The next preliminary question presented by all appellants relates to their demand for trial by jury. CR 38.02. The trial judge denied the demand for trial by jury, and in doing so observed: " * * * but because of the long period of time anticipated necessary to hear the case, and the many and complicated issues of fact involved, this motion was denied." Ap-

194

pellants point to Section 7, Kentucky Constitution, in which it is provided:

"The ancient mode of trial by jury shall be held sacred, and the right thereof remain inviolate, subject to such modifications as may be authorized by this Constitution."

Appellants also rely on Shatz v. American Surety Co. of N. Y., Ky., 295 S.W.2d 809 and Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44. We have no quarrel with those authorities. However, it is our view that by reason of the complicated issues involved in this proceeding, most of them interwoven with other phases of the litigation, and nearly all of them centering about alleged illegal acts by appellant McGuire, this action is one properly cognizable in equity rather than at common law. In a very definite sense this case may be designated as one involving complicated accounts and claimed violations of the fiduciary duties of appellant McGuire in his position as superintendent of the public schools of Carter County. In this posture, the case becomes one for determination by the judge without the intervention of a jury. See Hoaglin v. Carr's Administratrix, Ky., 294 S.W.2d 935; Commercial Union Assur. Co. v. Howard, 256 Ky. 363, 76 S.W.2d 246 and cases there discussed.

We turn now to the assignments of error as designated by appellant, McGuire, individually:

## THE EXPENSE ACCOUNT OF APPELLANT McGUIRE

The trial court awarded judgment for appellees against McGuire in the sum of $9,031.30, being the aggregate sum of travel expenses paid to McGuire by the Board for the period beginning September 30, 1955, to June 30, 1960. (A plea of the five-year statute of limitation was considered to preclude any claim for expense items prior to September 30, 1955, KRS 413.120.) At pain of over-simplification, it may be said that the record discloses that

the Board did pay McGuire the stated sum for travel expenses, and that there had been no express previous authorization for McGuire to incur the specific expenses. Claim vouchers for the expenses had been duly filed with the Board by McGuire during the period. These claims had been approved and paid by the Board in normal course. Many of the written claims as filed with the Board were no longer extant at the time of trial. It was explained that the Board's practice had been to preserve the vouchers until after an audit by the Auditor of Public Accounts, after which the vouchers were destroyed.

Many of the claims reflected travel by McGuire outside of Carter County. Appellees rely on Beauchamp v. Snider, 170 Ky. 220, 185 S.W. 868. That decision is not authoritative here because it was posited upon the then existing statute which precluded the Board's paying expenses for the superintendent outside the county. The present statute contains no such inhibition. KRS 160.410. In the main, appellant McGuire admitted his inability to give specific detail as to the nature of the school business he had performed while incurring the expenses. However, he insisted that in each instance he was performing school business, and there is no substantive evidence to the contrary. In a few instances the expense accounts reflected that the Board had paid hotel bills carrying charges for persons in company with McGuire. One or two of these hotel bills indicated a registration for "Mr. and Mrs. McGuire" at times subsequent to McGuire's divorce, and while he was unmarried. He disclaimed detailed information as to these, and in some instances it is not determinable from the record whether the Board had actually paid some of these items.

In this state of the record it is our view that the trial court erred in simply awarding the appellees full recovery of the entire claim of $9,031.30. The contract between McGuire and the Board, as well as

the Board's minutes, reflect that McGuire was to be reimbursed for expenses incident to school business. Manifestly it would have been impracticable, and in our view unnecessary, for McGuire to have obtained prior Board authority for every item of expense. We hold that the appellees did not prove illegal expenditure of school funds incident to the allowed travel expenses, and reverse so much of the judgment as permits recovery of appellant McGuire of the item of $9,031.30 for travel expenses.

## THE AUTOMOBILE INSURANCE

■ Judgment went against appellant McGuire in the sum of $1,510 based on a showing that McGuire had received that sum from an insurance company which carried collision and liability insurance on a Dodge automobile owned by the Board. It appears that McGuire had obtained the insurance and paid the premiums for it. The car was damaged in a collision; McGuire was driving it at the time of the accident. It was shown that McGuire had paid $250 of the insurance proceeds to the person whose vehicle was involved in the collision. However, it was also shown that approximately $1,100 of the insurance proceeds was paid on the purchase price of a substitute automobile and title to the new car was in the Board. We do not reach the question whether McGuire had an insurable interest, as that is not before us. In any event we consider that any funds he received from the insurance company would have been impressed with a constructive trust in favor of the Board. Consequently, it was proper to award judgment against McGuire for any portion of the insurance proceeds which he did not pay over to the use and benefit of the Board. Inasmuch as the record reflects that he did pay about $1,100 for this purpose, it was error to award judgment against him for the entire sum of $1,510. The judgment is reversed as to this item, with directions to allow credit to McGuire

of $1,100 on this phase of the judgment, plus premiums paid.

## THE CARPENTER CHECKS

The trial judge, as part of his findings of facts, stated:

"(6) That the Carpenter Body Works, of Indiana, from whom the Carter County Board had purchased school bus bodies, made refunds on undelivered bodies as follows:

| | |
|---|---|
| October 19, 1955 | $4,079.80 |
| November 19, 1956 | $2,026.56 |
| March 27, 1959 | $2,147.89 |

and checks for these amounts were received by and cashed by the defendant, McGuire. Although defendant denied having seen the checks, the evidence including a handwriting expert was convincing."

As a further part of the trial court's findings of fact it was pointed out that during the course of the hearing, incident to a court-ordered physical inventory of school buses, "[A] clandestine, covert effort was made to defeat the true findings of the inventory order by hastily moving into Carter county (sic) four used school busses (sic) from Ohio and Michigan school districts and mingling them with the vehicles on hand. The four spurious vehicles were positively identified, by out of state witnesses, familiar with them."

■ Pursuant to those factual findings, the trial judge awarded the appellees judgment against appellant McGuire for sums equal to the refunds, as above set out. As to the first two items of refund we find that the record abundantly supports the trial judge's factual findings and the judgment based thereon. It is true that McGuire offered evidence to the contrary, but the circumstances as well as the affirmative testimony are quite ample to sustain the court's finding.

With respect to the item of $2,147.89 the record indicates that the Board recovered that sum, on the very item, by voluntary payment to it of the money by appellant W. E. Stevens. In view of the uncontradicted testimony that the Board has already recouped that sum there is no basis for allowing a second recovery of it from McGuire. Accordingly, the judgment is reversed insofar as it allows recovery against McGuire for the $2,147.89, and is affirmed as to the recovery of the items of $4,079.80 and $2,026.56.

Appellants refer to alleged incompetent testimony of witnesses, Morris, Bass and Chase. We find no testimony in the record of these witnesses, hence we are unable to evaluate the claim of error as to their evidence.

### THE WHITEHURST CLAIM

Evidence was heard to the effect that E. B. Whitehurst had made a claim against the Board for a sum greater than was due to him for services rendered. In fact, Whitehurst testified that he had done this and that he had made payment to McGuire of the excess in the sum of $6,178.60, by way of a "kick-back." There was sufficient evidence to warrant the court's finding of fact in connection with this incident, despite the denial by McGuire. The court awarded judgment against McGuire and Whitehurst in favor of appellees for the $6,178.60. Whitehurst has not appealed from the judgment as to him.

■ Appellant McGuire urges that the judgment must be reversed as to the Whitehurst claim because the trial judge held a hearing outside the territorial limit of the circuit court district. CR 77.02. We hold that there was no "hearing" within the meaning of CR 77.02, despite the fact that the trial judge did attend the taking of the evidence of Whitehurst. It should be noted that Whitehurst was critically ill and under close care of physicians. It became apparent that his deposition should be taken at Ashland, Boyd County. Conflicting reports were received from the doctors as to whether Whitehurst could give his deposition. One of the doctors reported that the deposition could be taken if it were limited to two hours and done under appropriate limitations looking toward the welfare of the health of the witness. The trial judge announced that he intended to be present at the deposition and "control it as completely as possible" insofar as any harmful effect to the witness occurred. It is true that the judge ultimately said that the deposition would be a "hearing," but we do not find that controlling. We consider that the judge exercised a sound discretion by being present in order to prevent any possible danger to the witness in these circumstances. There is no suggestion that appellant was in any manner prejudiced by the judge's presence. Even if his being there could be called error, which we doubt, it certainly was not prejudicial. CR 61.01 precludes our using the incident as a basis for reversal. Accordingly, the judgment for $6,178.60 as to the Whitehurst claim is affirmed.

We turn to consideration of the separate assignments of error in behalf of appellants W. E. Stevens and W. L. Gearhart. We preface this phase of the opinion by noting that judgment was entered against McGuire, Whitehurst and Gearhart, jointly and severally, for $1,938.40, as the aggregate sum shown to have been illegally expended from the Board's funds for services and supplies to a building owned by McGuire and Gearhart. Judgment was entered against Whitehurst and Gearhart for $175.18 for supplies furnished Gearhart and paid for from the Board's funds. Judgment was entered against W. E. Stevens for certain excess payments for buses and a truck; the aggregate of the judgment for these items is $8,821.62.

### THE TESTIMONY OF
### WILLIAM S. DURHAM

■ Appellant Stevens contends that the testimony of William S. Durham was incompetent. Durham testified that he

serves as a supervisor for Chrysler Corporation and his duties included "the supervisions of entries of dealers' orders and posting the dealer record page when the order is shipped." The original invoices of the company are printed on a data processing machine. According to the witness, there was no means for learning the identity of the personnel making the original entry upon the records. The records were used in the regular course of business of the corporation. In these circumstances we think it is plain that the evidence of the witness was competent. The authorities cited for appellant on this point recognize that evidence of this type is admissible if sufficient reason is shown why the person who made the original entries is unavailable. See Baskett, Nichols & Norment v. Rudy, 186 Ky. 208, 217 S.W. 112; In re Independent Distillers of Ky., D.C., 34 F.Supp. 724; and Edwards v. Whitley City Sales, Inc., Ky., 246 S.W.2d 1018.

## SUFFICIENCY OF EVIDENCE AS TO STEVENS

■ Appellant Stevens asserts that the judgment against him relating to the overpayment for buses and a truck is not supported by the evidence. We conclude that there is no merit in this contention in view of the record, and particularly in view of the flagrant effort to foil the court's physical inventory by the importation of spurious buses. Stevens' own explanation that he did not keep his own books and did not understand about them is not of such high probative value as to refute the host of circumstantial and direct evidence against his position.

## SUFFICIENCY OF EVIDENCE AS TO GEARHART

■ Appellant Gearhart urges that the evidence against him is insufficient to support the judgment against him. He testified that he had never requested that any money of the Board be paid in his behalf, and that he had no knowledge that any such money had been paid. Assuming this to be true, the fact remains that there was competent evidence reflecting that payments of the Board's funds were indeed credited to the account of Gearhart. He received the benefit of the payments and recovery of them from him is warranted under the theory of "unjust enrichment" or "money had and received."

## STATUTE OF LIMITATION AS TO CLAIM AGAINST STEVENS

■ It is contended that the five-year statute of limitation bars recovery from Stevens as to the alleged truck overpayment of $3,738. on July 10, 1956. The original complaint was filed within the five-year period, but it did not make specific reference to the truck overpayment. The language of the original complaint in this respect is:

"That during the fiscal year of 1955–56, the Board paid to Stevens the full purchase price for two dump trucks but that Stevens delivered a flat bed truck and a dump truck without the body which vehicles were approximately $2,000. less value in cost than the full amount received by him for said trucks."

An amended complaint was filed December 14, 1961, in order to conform to the proof; in the amendment the exact details of the 1956 truck transaction were recited. It is our conclusion that CR 15.03 governs this situation, since the claim asserted in the amended complaint "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." The essence of the original complaint as it related to Stevens had to do with alleged irregularities in the accounts between the Board and Stevens with respect to the trucks and buses. The original complaint "attempted" to set forth details of the transaction or occurrence, and the amended complaint merely perfected that statement. Thus, the amended

complaint related back to the date of the original complaint.

## CLAIMS AGAINST GEARHART

The trial judge entered judgment for various sums against appellant Gearhart arising out of services and materials allegedly furnished for a building owned by Gearhart and McGuire. We have heretofore discussed the question whether there was sufficient evidence to sustain the judgment. Gearhart levels other attacks upon the judgment against him. He contends that the five-year statute of limitation bars recovery of $708.95 of the judgment and that there was no pleading seeking recovery of $433.95 allowed against him. Additionally, he urges that he was not named as a party defendant, individually, but only in his capacity as a member of the Board of Education.

It is significant that early in the course of the trial it was disclosed that certain Board funds had found their way to Whitehurst in payment of obligations owed on the McGuire-Gearhart building. Gearhart specifically stated in the record that he had not known of this, but desired to repay any such sum or sums so paid. The original complaint did not seek specific recovery from Gearhart on these items, but an amended complaint did. The original complaint was well within the five-year period, but the amendment was too late. However, the representation by Gearhart of his desire to repay any such sums was made before the expiration of the limitation period. In light of the manner in which the parties treated these items, we conclude that CR 15.02 is controlling, and that the statute of limitations is inapplicable.

We note that there was never any pleading seeking recovery of $433.95 against Gearhart. To the extent that the judgment against him permits recovery of that sum it is reversed, but it is affirmed in all other respects.

We attach no significance to the claim that Gearhart was not named as a defendant. He was named. The fact that he was also designated as a member of the Board of Education did not serve to exclude his personal responsibility.

The judgments in the consolidated cases are affirmed in part and reversed in part, with directions to enter new judgments conforming to this opinion.