**CITY OF SHIVELY, Kentucky, a Municipal Corporation, Appellant,**

v.

**R. W. HYDE, Jr., an Individual d/b/a Hyde Construction Company, and R. B. Tyler Company, a Corporation, both d/b/a Hy-Ty-Co, a joint venture, Appellees.**

Court of Appeals of Kentucky.

March 7, 1969.

Lawrence S. Grauman and Edwin I. Baer, Raymond C. Stephenson, Louisville, for appellant.

Frank J. Dougherty, Jr., Dougherty, Gray & Haunz, Oldham Clarke, McElwain, Dinning, Clarke & Winstead, Louisville, for appellees.

CULLEN, Commissioner.

R. W. Hyde, Jr., and R. B. Tyler Company, engaging in a joint venture under the name Hy-Ty Company, entered into a $2.7 million contract with the City of Shively for construction of a sewer system, calling for installation of some 60 miles of sewer pipe and the construction of various pumping and lift stations. When the project ended the parties were in a state of controversy. The city claimed that the work had been done defectively; it withheld the last progress payment of $32,649 and the final completion retainage of $150,000; it asked over $3.5 million by way

of damages for defective construction; and it claimed $93,900 as liquidated damages for delay in performance. The contractors not only claimed the progress and retainage payments but asserted a claim of damages of some $450,000 for delays caused by the city and a claim of some $85,000 for extra work.

The contractors brought suit against the city asking in Count One of their complaint for an arbitration as alleged to have been provided for in the contract, and in Count Two for a declaration of rights and a judgment against the city for such amounts as the court should find were due the contractors. The city moved to dismiss the complaint for failure to state a claim on which relief could be granted. The motion was sustained as to Count One only. Thereupon the city filed an answer, and a counterclaim asking damages of some $3.6 million.

The case was tried on depositions. The judgment awarded the contractors $150,000 for retainage, $32,649 for last progress payment, $48,643.04 for sheeting called for by the contract, and $14,180.08 for extras. It allowed the city, as an offset, liquidated damages for delay in the amount of $93,900 and damages for defects in the amount of $1,765, making a net recovery for the contractors of $149,807.12. On this amount the judgment awarded interest from the date the project ended, November 30, 1962.

The city has appealed and the contractors have cross-appealed.

The city's first contention is that the trial court erred in refusing to dismiss Count Two of the complaint for failure to state a claim upon which relief could be granted. The contention rests on the proposition that under the terms of the contract there were three conditions precedent to the right of the contractors to receive final payment and that the complaint was fatally defective because it failed to allege compliance with any of those conditions. The alleged conditions were: (1) The issuance of a final certificate of satisfactory completion, by the supervising engineer; (2) the signing of a release of claims by the contractors; and (3) the making of a final clean-up satisfactory to the supervising engineer.

We think the contention is not sustainable, for two reasons. First, although the city moved at the outset of the action to dismiss the entire complaint, it is clear from the record that their motion was addressed solely to Count One. In the brief they submitted to the circuit court in support of their motion they not only confined their argument to the plea for arbitration set forth in Count One, but they specifically urged that Count Two be transferred to the Common Pleas Branch for a jury trial. At no time during the taking of proof was any suggestion made that Count Two was defective for failure to allege compliance with conditions precedent. Only after the trial court had made its findings and conclusions was the point raised. We think the objection came too late. In the second place, we think the complaint may fairly be interpreted as alleging that the city had made a blanket refusal to pay the sums due the contractors, without regard to the engineer's certificate or other conditions of payment. The complaint alleged that the contractors had completed the work but that the city refused to accept the system or to pay the amounts due. It further alleged that the supervising engineers had certified that the work was substantially completed. It is reasonably plain from the complaint that the city was refusing to *honor* the contract, such as by refusing to make progress payments certified by the supervising engineers to be due, wherefore strict compliance with the requirements of the contract for obtaining final payment would have been to no avail. It is to be noted that a major portion of the contractors' claims did not relate to the right to be paid the retainage, which was the only thing to which the alleged conditions precedent were applicable. So we think there was no fatal defect in Count Two of the complaint. See 17A C.J.S. Contracts § 499 (6), pp. 756, 757.

■ The city's second claim of error is addressed to the trial court's denial of the city's motion to transfer the action to the common pleas branch of the court for trial by jury. The action involved a great detail of facts and complicated issues, and this condition was intensified by the fact that a suit by the supervising engineers against the city had been consolidated with this action for trial. We think the trial court properly determined that it would be impracticable for a jury intelligently to try the case. CR 39.01; Hoaglin v. Carr's Adm'x, Ky., 294 S.W.2d 935; McGuire v. Hammond, Ky., 405 S.W.2d 191; Akers v. Stamper, Ky., 410 S.W.2d 710.

■ This brings us to the city's main argument on the merits, which is that the evidence established conclusively that the sewer system was so defectively constructed that the city not only should have been relieved of the final payments under the contract but should have been awarded substantial damages measured by the cost of placing the system in proper condition. The major problem with the system is one of "surcharging," which simply means that during periods of heavy rainfall the system becomes flooded with water to such an extent that the processing plant must be bypassed and the flow of the system is turned directly into the Ohio River. The proof for the city was to the effect that there were numerous defective connections and breaks in the mains, the result of defective workmanship and materials. A substantial amount of this proof was by representatives of an engineering firm employed by the city to make tests and inspections of the system. There also was evidence by other witnesses, including the manager of the system and two engineers employed by the Louisville and Jefferson County Board of Health.

For the contractors, there was evidence by a firm of engineers employed by them to make tests and inspections, that the major causes of the surcharging were defective pipes and joints in private sewer lines connected with the system, the connection of downspouts and foundation drainage pipes with the private sewer lines running into the system, and faulty design and location of a large number of manholes in low areas; that none of these causes was chargeable to the contractors; and that there were only minor defects in the system attributable to defective workmanship. The supervising engineers whose duty it was under the construction contract to supervise the construction work testified that the work was done in accordance with the plans and specifications and in a good workmanlike fashion; that their inspection disclosed only a few minor breaks; and that an investigation made by them indicated that the surcharging came from defective house service lines and connections installed by the individual property owners.

It was the opinion of the chancellor that, upon weighing the evidence for each side, he could not say that the evidence for the city was so overwhelming as to *require* a finding for the city. On the conflicting evidence he found for the contractors and we cannot say that he acted erroneously in so doing.

■ The city's final point is that the trial court erred in awarding interest on the amounts found due to the contractors. The city argues that this was a case of unliquidated damages on which interest ordinarily is not allowed. We note, however, that as to all of the amounts awarded the contractors, except perhaps the $14,000 awarded for extras, there was no real dispute as to the *computation* of the amount claimed to be due; the city did not dispute the *amount*, it simply denied any liability at all. Thus this case is comparable to Shanklin v. Townsend, Ky., 434 S.W. 2d 655. In any event, whether or not the damages be deemed liquidated or unliquidated, we think it was within the discretion of the trial court, in the circumstances of this case, to award interest. See Curtis v. Campbell, Ky., 336 S.W.2d 355; City of Louisville v. Henderson's Trustee, 11 Ky. Law Rep. 796, 13 S.W. 111; Kendall v.

Mussman, Ky., 247 S.W.2d 502; Dalton v. Mullins, Ky., 293 S.W.2d 470.

We come now to the claims of the contractors on their cross-appeal.

The major complaint of the contractors, expressed in the form of various different claims, is that they suffered loss due to delay of the city in providing the necessary right of way, delay of the city in issuing a work order for commencement of the job, and failure of the city to provide right of way of the width specified by the contract. The trial court denied all of these claims, except that in fixing the liquidated damages allowed the city for delay of the contractors in completing the job within the time prescribed in the · contract the court allowed the contractors credit for a number of days during which the delay.was attributable to failure of the city to provide the right of way.

■ As concerns the matter of delay in issuing the work order, there was evidence to warrant a conclusion that the contractors themselves were not ready on the day the work order originally was to have been issued, and that the delay of a few weeks in issuing the work order did not cause any substantial loss to the contractors.

■ As concerns delay in furnishing the right of way, the supervising engineers testified that in their opinion the contractors had been caused little or no delay by the failure to secure easements. There was evidence also that in areas where there was some delay in furnishing all of the right of way there still was available enough right of way to enable the work to proceed with full use of the men and equipment present in the area. Furthermore, there was evidence that before the work order was issued the city and the contractors had reached a solution satisfactory to both of the problem of arranging the work schedule to adjust for delays occasioned by the necessity of condemning some of the right of way.

■ As concerns the alleged failure to provide right of way of sufficient *width,* the evidence would warrant the conclusion that this was a matter more of inconvenience than of any serious handicap or obstacle to the progress of the work. The supervising engineers did not attribute any of the cause of the contractors' delay in completion to any deficiency in width of the right of way furnished.

■ The contractors claimed an item of extra expense incurred in cleaning the sewer line and the manholes, caused by introduction of mud and water into the system in the making of house service line connections by plumbers employed by the private property owners. The contract required the contractors to "rod out" the entire system, at completion, and flush it with water if necessary, to remove debris and obstructions and to carry off debris and trash. The chancellor interpreted this provision as contemplating that the contractors would need to clean the line, and he felt that the evidence was not convincing that the connections of private sewer lines created any necessity to clean or problem of cleaning beyond that contemplated by the contract. We find no error in this.

■ The contractors also claimed extra compensation for cleanup and grading of the surface of the right of ways. The contract required them only to leave the surface in an acceptable machine-finished condition. A separate Nursery-Fence contractor had the obligation to do the finish work, such as raking, seeding, sodding, etc. The sewer contractors claimed, however, that in certain areas where the city did not furnish right of way of the required width the contractors were forced to trespass on the yards of the property owners and in order to pacify those owners the contractors had to do raking and cleaning beyond the boundaries of the right of ways. The chancellor concluded that the work so claimed to have been done was within the scope of the Nursery-Fence contract, wherefore the sewer contractors were in substance vol-

unteers in doing the work. We cannot say that the finding is clearly erroneous.

The chancellor was of the opinion that all of the claims here embraced in the cross-appeal were afterthoughts on the part of the contractors "with the intention of cutting down Shively's recovery." Some justification for that opinion may be found in the fact that in Count Two of the complaint the contractors made allegations only as to amounts due to them "under the terms and provisions of the contract," and made no mention of any claim for damages for *breach* of the contract by Shively.

The judgment is affirmed on the direct appeal and on the cross-appeal.

All concur except STEINFELD, J., who did not sit.