McKee v. C., N. O. & T. P. Ry. Company's Receiver.

CASE 40—PETITION ORDINARY—NOVEMBER 18.

# McKee v. C., N. O. & T. P. Ry. Company's Receiver.

### APPEAL FROM PULASKI CIRCUIT COURT.

1. RAILROADS—FENCING AND CATTLE GUARDS—STATUTORY CONSTRUCTION.—Under the provisions of section 1790, of the Kentucky Statutes, by which it is made the duty of railroad companies and all land owners adjoining the right of way to construct and maintain a good and lawful fence to the extent of one-half each, and the provision of section 1793, that corporations operating railroads "shall erect and maintain cattle guards at all terminal points of fence constructed along their lines, except at points where such lines are not required to be fenced upon both sides and at public crossings," the terminal points where cattleguards are required to be constructed are not necessarily between the property lines of the various owners, but are wherever the lateral fencing for any reason stops, and where, from the want of cattleguards at the stopping points, the road under fence would be left open to trespass.

2. REMOVAL OF CATTLEGUARDS.—The railroad company may at any time remove cattleguards at points where it is under no legal obligation to maintain them, the rights of the parties not being regulated with reference thereto by the provisions of law as to division fences on farm lines.

G. W. SHADOAN FOR APPELLANT.

1. Under the provisions of the charter under which appellee was operating, it was the duty of the company to erect fences and cattlegaps at all points where it might be necessary. See Acts of 1871-2, page 23.

2. The fences and cattleguards erected by appellee had been there

for about twenty years, and appellant had been permitted to enjoy and use them to enclose his farm for all that time, and had acquired a right that appellee could not divest him of without giving notice as required by the statutes. Kentucky Statutes, secs. 1786-1787; Ward &c. v. Paducah &c. R. R. Co. (Tenn,), 4th Fed. Rep., 862.

3. Under the provisions of section 1753, of the Kentucky Statutes, the company was required to provide cattleguards at all terminal points of fences constructed along their line, and this does not apply merely to the fences required to be constructed parallel with the track.

4. In view of the exercise of extraordinary privileges conferred upon corporations, in construing the grants of these rights and powers, and of the general law regulating their exercise, the court should hold them to the strictest accountability.

O. H. WADDELL FOR APPELLANT.

1. The fencing referred to in section 1793, of the Statutes, is the fencing running parallel with the railroad and it is required to be constructed for the purpose of separating the railroads and the lands adjoining, the intention being to secure the enclosure of the road and prevent the trespassing of stock thereon, and also to furnish additional security to the lives of those who travel on the road.

2. If appellant could recover at all, the measure of damages would be such as might accrue to him from the time of the removal of the cattleguards until the expiration of a reasonable time in which to build a fence; he should not be permitted to recover for the repeated trespasses after the removal when he had taken no steps to prevent the trespass, and had allowed his lands to lie unfenced expecting to recover for the repeated destruction of his grass and crops.

C. B. SIMRALL OF COUNSEL ON SAME SIDE.

JUDGE HAZELRIGG DELIVERED THE OPINION OF THE COURT.

By section 1790, Kentucky Statutes, it is made the duty of railroad companies and of owners of lands adjoining the company's right of way to construct and maintain, except in specified cases, a good and lawful fence to the extent of one-half each along the division line of the right of way and the land of adjoining owners; and by section 1793 of the

statutes it is provided: "That all corporations and persons owning or controlling or operating railroads as aforesaid shall erect and maintain cattle guards at all terminal points of fences constructed along their lines, except at points where such lines are not required to be fenced upon both sides and at public crossings. But where there is a private passway across said railroad the land owner, for whose benefit it is kept open, shall bear one-half of the expense of cattle guards and gates, the former to erect the gates, the corporation or person operating the railroad to erect the cattle guards."

The contention of the appellant, as set out in his petition below, is that it was the duty of the railroad company operating its line through his farm to construct and maintain cattle guards at the points where the road entered his farm and where it left it, and that the terminal points referred to in the statutes are the points where the division fences of the various property owners approached the railroad or come up to the right of way. And that while the company did construct such guards when it built its road in 1876, it had, in 1894, torn them away, by reason of which his farm had been trespassed upon by straying stock and his crops destroyed, to his great damage, etc.

We think this contention is based on a misconception of the statute. The fences "along their line" at the terminal points of which cattle guards were to be erected, are those running parallel with the railroad. The purpose of the law is to have the roadway entirely fenced in for the protection of the traveling public, though protection to stock is also secured by the statute. The provision "except at points where such lines are not required to be fenced on both sides," shows this

to be the proper construction.  For it is where the right of way is not fenced that the land owners, with division fences between them, would need cattle guards; and where the statute would require them, if its purpose was to compel the company to enclose the lands of adjoining owners.  The remedy of the land owner is to build his part of the fence along the right of way and require the company to do likewise.  Then no cattle guards will be needed except at public and private crossings, and this the statute requires; and at terminal points in the parallel fencing along the right of way, and this is what the statute demands.  These points are not necessarily between the property lines of the various owners, but are wherever the lateral fencing for any reason stops, and where, from the want of cattle guards at the stopping points, the road under fence would be left open to trespass. Wherever the track leaves ground which the company is bound to fence and passes on to ground which the company is not bound to fence, there must be cattle guards placed so as to completely fence in the track.  The company not being under any legal obligation to maintain cattle guards at the points of entering and leaving the complainant's farm, merely because they were dividing lines with his neighbors, might remove them at any time.  These guards were not division or partition fences between his lands and those of the company.  They were wholly on the lands of the company, and the rights of the parties are not to be regulated by the provision of law as to division fences on farm lands.

The averments of the amendment as to the failure of the company to maintain cattle guards at certain public crossings on public roads, running on the north and south of the plain-

tiff's farm are indefinite, and it is not made certain how such failure affected his rights or caused him any loss.

The judgment sustaining a demurrer to the petition is affirmed.