# Lexington & Eastern Railway Company, et al v. Russell, et al.

(Decided October 9, 1917.)

## Appeal from Breathitt Circuit Court.

1. Railroads—Fences and Cattle Guards.—Section 1793 of the statute requiring cattle guards to be constructed at terminal points of fences constructed along the lines of railroads means lateral and parallel fences with the railroad track, and it is only where such fences terminate that cattle guards are required to be constructed, except at public road crossings and private passway crossings, as designated in the statute. Before the adjoining landowner can complain of the failure to construct or maintain cattle guards where fences approach the track, he must show that they are lateral and parallel fences, and that the point where cattle guards are not constructed or maintained is where such fences terminate, and if he or some of his vendors have not constructed the fence on both sides of the right of way it must be alleged and proved that one-half of such fences has been constructed by the adjoining landowner and proper notice given to the railroad company to construct the other one-half.

2. Railroads—Fences and Cattle Guards.—The statute does not require a railroad company to construct cattle guards at the points of entering and leaving plaintiff's farm, unless such points are terminal ones of lateral and parallel fences to the right of way.

3. Railroads—Fences and Cattle Guards.—Section 1789 relieves a railroad company for the first five years of its operation, from the operation and obligation of the fencing laws of this Commonwealth, but not necessarily of the obligation to erect cattle guards at terminal points of lateral fences, provided such fences were wholly constructed by the landowner.

SAMUEL M. WILSON, BENJAMIN D. WARFIELD, JAMES J. DONOHUE and O. H. POLLARD for appellant.

KELLY KASH, G. W. FLEENOR and CHESTER GOURLEY for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellees and plaintiffs below, W. M. Russell and Orlena Russell, are husband and wife, and they jointly own a farm in Breathitt county, Kentucky. They filed this suit against appellants and defendants below, Lexington & Eastern Railway Company and Louisville & Nashville Railroad Company, seeking to recover damages for the failure of the defendants to construct cattle guards at what is alleged proper places where their

track runs through the plaintiffs' farm, and negligently maintaining those it did construct, so that cattle strayed into plaintiffs' fields and damaged and injured their crops for the years 1911, 1912, 1913 and 1914, in a total sum of $1,390.00.

A general denial, with some other defensive pleas not necessary to now notice, completed the answer, and a denial of the affirmative pleas contained in the answer made up the issues. Upon a trial of the case a verdict was returned in favor of plaintiffs for the sum of $900.00, upon which judgment was rendered, and to reverse it the defendants prosecute this appeal.

A number of errors are relied upon as grounds for a reversal of the judgment, but we deem it necessary to consider or discuss only those hereinafter referred to. The grounds for recovery as stated in plaintiffs' pleading are:

"Plaintiffs state that it was the duty of the defendants in constructing and maintaining said line of railroad and in operating same to erect and maintain cattle guards at terminal points of fences constructed along said line of railroad, and at public crossings, and to construct and maintain cattle guards at private passways across said line of railroad; that it was the duty of defendants to so construct and maintain said cattle guards as to prevent cattle and stock from entering the fields and premises of the plaintiffs, at points where said points of railroad crossed and intersected lines of fences of plaintiffs, and where said lines of railroad crossed and intersected public or private crossings; the defendants did pretend to construct and place across said line of railroad at points where it was the duty of the defendant under the law to construct and maintain cattle guards, two cattle guards, one at the upper end of the land and premises of plaintiffs and where said line of railroad left the premises and lands of plaintiffs and entered the public highway or commons; and one at the lower end of the premises and lands of plaintiffs; but plaintiffs allege and state that said cattle guards were so carelessly and negligently and unlawfully constructed and maintained, and were so imperfectly and unskillfully constructed and maintained that each of said guards were insecure and worthless and of no value, and were not sufficient to prevent stock and cattle from crossing same and entering upon the lands and premises of plaintiffs."

The facts are that plaintiffs' farm lies up and down the Kentucky river, and the right of way of defendants runs through it for a distance of nearly a mile. The right of way was acquired (but just how it does not appear) in 1910, the track was constructed during that and the following year, and the rails were laid some time during the latter part of 1911 or early in 1912, immediately after which it began and has continued to be operated as a railroad. There are no lateral or parallel fences to the right of way (except as herein stated) and the only places where the fencing of plaintiffs was interfered with are where the right of way entered and emerged from their farm, there being fences at those two points approaching the right of way at practically right angles, and these were located upon the respective lines of plaintiffs' farm at the time of the acquisition of the right of way and since.

The duty of a common carrier, or those operating a railroad, to fence the right of way, or to construct cattle guards, is purely statutory, there being none such at the common law. 33 Cyc. 311-312; Elliott on Railroads, section 1198; 7 Amer. & Eng. Ency. of Law 906-912; Rorer on Railroads, section 612; Payton v. L. & N. R. R. Co., 115 Ky. 53. In the Payton case, in announcing the doctrine, this court said:

"The common law imposed no duty upon railroad companies to fence their roads, maintain cattle guards, or erect any other barrier or stay against the intrusion of stock upon their roads or right of way. See Elliott on Railroads, section 1198; 7 Am. & Eng. Ency. of Law 906-912; Rorer on Railroads, 616; Birmingham, etc., R. R. Co. v. Parsons (Ala.), 13 South 602, 27 L. R. A. 264, 46 Am. St. Rep. 92. And wherever these duties exist they are always by virtue either of a contract or a statute."

There is no pretense that there existed any express contract between plaintiffs and defendants for the latter to construct cattle guards on any part of plaintiffs' premises, and such a contract must be an express and not an implied one, growing out of the mere fact of the railroad track crossing the fence inclosing plaintiffs' farm, for if such an implied contract could arise under that state of case there would have been a duty at common law to construct cattle guards at those points; but, as we have seen, no such duty existed under that law. The contention, therefore, that defendants were under a

duty growing out of an implied contract with plaintiffs to construct cattle guards at the places of ingress to and egress from their farm cannot be upheld. Our statute upon the subject is section 1793 of the Kentucky Statutes, which reads:

"That all corporations and persons owning or controlling and operating railroads as aforesaid, shall erect and maintain cattle guards at all terminal points of fences constructed along their lines, except at points where such lines are not required to be fenced on both sides, and at public crossings. But where there is a private passway across said railroad, the landowner for whose benefit it is kept open shall bear one-half of the expense of cattle guards and gates, the former to erect the gates, the corporation or person operating the railroad to erect the cattle guards."

This section requires the construction of cattle guards at three distinct places, they being at public crossings (where the public road runs through an inclosed farm), at private passways, and at terminal points of fences constructed along the line of railroad, except where the line is not required to be fenced on both sides. There is no testimony showing that the defendants failed to either construct or maintain cattle guards at crossings, over either a public road or a private passway, as required by the statute, nor is it alleged or proved that there are any "terminal points of fences constructed along their lines" at any place upon the plaintiffs' premises.

In an unbroken line of decisions from this court it has been held in construing the statute, *supra,* that fences "along their line" means lateral fences running parallel with the railroad track, and that it is only where such fences terminate that the railroad company is under a duty to construct cattle guards. McKee v. C., N. O. & T. P. Ry. Co., 102 Ky. 253; Younger v. L. & N. R. R. Co., 41 S. W. 25; L. H. & St. L. Ry. Co. v. Beauchamp, 108 Ky. 47; McGhee, etc., v. Guyn, 98 Ky. 209; McGhee, etc., v. Gaines, 98 Ky. 182; Payton v. L. & N. R. R. Co., 115 Ky. 53; Gibson v. L. & N. R. R. Co., 106 S. W. (Ky.) 838; Parrish v. L. & N. R. R. Co., 126 Ky. 638; Hall v. Trustees Cinn. Ry., 13 Ky. Law Rep. 436.

As an illustration of the court's interpretation of the section, *supra,* of the statute, it is said in the McGhee case:

"The fences 'along their line' at the terminal point of which cattle guards were to be erected, are those

running parallel with the railroad. . . . These points are not necessarily between the property lines of the various owners, but are wherever the lateral fencing for any reason stops, and where, from the want of cattle guards at the stopping points, the road under fence would be left open for trespass. The company, not being under any legal obligation to maintain cattle guards at the point of entering and leaving the complainants' farm, might remove them at any time.''

In the Parrish case it is said:

''It necessarily follows from this conclusion that the company cannot be required to erect cattle guards except at points where under the fencing law either the company or the owner may require fencing to be constructed; nor can their erection be demanded until such fencing has been erected. When parallel lines of fencing have been constructed along both sides of the railroad, then it becomes the duty of the company to erect cattle guards at public crossings and at the terminal points of fencing; and, if delinquent in this respect, the company may be required to respond in damages to any person whose stock have been injured or killed by its failure to erect and maintain them. . . . In the case before us, as the right of way of the railroad was not enclosed on both sides by parallel fences, cattle guards were not required. Hence, appellant cannot recover damages for the failure of the company to erect them.''

There is neither allegation nor proof of the existence of any such parallel fences, or of any consequent terminal points so as to create the duty of the defendants to erect cattle guards under the requirements of the statute, and the authorities, *supra,* without a dissent, are to the effect that if cattle guards should be erected at points not required by the statute, the railroad company would be under no duty to maintain them. Furthermore, the opinions, *supra,* hold that the only places where the railroad company can be required to construct or contribute to the erection of parallel fences between its right of way and the adjoining landowner are where the farm is either improved lands, or, if unimproved, is enclosed on three sides with sufficient fences, or other natural barriers mentioned in the statute, as will prevent the egress of stock, and then only after the landowner has constructed his part of the fence and given the railroad company notice to construct its part. Sections 1791 and

1792 of the Kentucky Statutes; Parrish v. L. & N. R. R. Co., *supra.*

The petition in the case before us failed to allege that the plaintiffs had constructed any fence between their lands and the right of way, or that they had given the company notice to construct its portion of such fences. In this, under the authorities, *supra,* their pleading was defective. Neither did the proof in the case establish such facts. It is true that plaintiff, William Russell, testified that some time in 1913 he constructed a fence on the upper side of the right of way, and that he gave notice to a Mr. Bryant to be served upon the agent of the defendant notifying it to construct its part of the fence, but his testimony fails to show that the fence which he constructed was a lawful one, and whether lawful or not, it was constructed entirely upon one side of the right of way, which side was the one of his own choosing. "One-half of the fence" within the meaning of the statute, means one-half of each fence on either side, and not that one party can construct the entire fence on one side of the right of way and force the other party to construct the entire fence on the other side of the right of way. But, beyond all this, section 1789 of the statute, which is a part of the same article pertaining to "railroad fences," excludes those owning or controlling a railroad from the obligation of the fencing laws who have not constructed and operated the railroad for a period of five years. Under the provisions of this section it would seem that before the adjoining landowner could require the railroad company to construct a part of the parallel fence, or fences, along the right of way, the railroad must have been constructed and in operation for as much as five years, which is not a fact in this case. If, however, there were parallel fences along the line of the right of way constructed either by the present or past owner, we are of the opinion that the company could be required to construct cattle guards at the terminal points of such fences under the provisions of section 1793 of the statute, notwithstanding the railroad might not have been constructed or operated for as much as five years, because it will be observed that section 1789 affects only the obligation of the railroad company as to *fencing* and not as to the construction of cattle guards. They are required to be constructed at points mentioned in section 1793, regardless of the length of time that the railroad has been in operation, and if those points exist

within five years immediately after the construction of the road, the necessity for cattle guards is as urgent as at any subsequent time after five years. Indeed, there is no more room for construing the section so as to excuse the construction of cattle guards at terminal points of fences along the line of the railroad than there is to excuse it from erecting such cattle guards at public crossings and private passways. We conclude, then, that section 1789 of the statute excuses the railroad only from being compelled, at the instance of the adjoining landowner, to fence its right of way within the first five years of its existence, and not to relieve the company from constructing cattle guards within that time at points required by section 1793, provided they exist. As the plaintiffs in this case neither alleged nor proved a duty upon the defendants to construct or maintain the complained of cattle guards, it results that they failed to sustain their cause of action, and the jury should have been so instructed, as was requested by the defendants.

In view of the foregoing, it will be unnecessary to discuss or determine other questions ably argued and presented by counsel.

Wherefore, the judgment is reversed, with directions to proceed in accordance with this opinion.