## Mansfield v. Frankfort & Cincinnati Railway Company.

(Decided November 29, 1921.)

### Appeal from Scott Circuit Court.

1. Railroads—Fences and Cattle Guards.—A railroad company is required to erect and maintain "cattle guards" at such places only as the statute, section 1793, Ky. Stats., designates.

2. Railroads—Fences and Cattle Guards.—Section 1793, Ky. Stats., requires a railroad company to erect and maintain "cattle guards" at the terminals of fencing along its tracks, wherever under the fencing laws a fence upon both sides of the railroad right of way is required to be maintained, and if one of these terminal points is a private passway, the railroad company and the owner of the land for which the passway is maintained, must bear the expense of the "cattle guards" equally, but, the duty being upon each, the company cannot excuse itself as against one other than the passway owner upon the ground, that the owner of the passway has not required the erection or maintenance of the "guards," or has not offered to contribute to their erection.

LLEWELLYN F. SINCLAIR for appellant.

J. CRAIG BRADLEY for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Reversing.

The question presented upon this appeal is whether a corporation engaged in the operation of a railroad is under a duty to maintain cattle guards where a private passway crosses its tracks, at the place and under the circumstances presented in this record, for the protection of the cattle of one of the general public, and other than the one for whom the passway is maintained. The situation and circumstances can best be illustrated by the following diagram:

The railroad and Georgetown and Paris turnpike are parallel to each other. The appellant resides upon the farm upon the north side of the Georgetown and Paris turnpike, which is designated as "Mansfield." Lateral fences are situated on each side of the pike, separating it from the lands upon either side. Between the pike and railroad "right of way" are improved and inclosed lands, and a fence extends along the north side of the "right of way" separating it from the lands between it and the pike. On the south side of the railway is the Hall land, and a fence is situated along the south side of the "right of way" separating it from the Hall land. A passway comes out of the Hall land, crosses the railroad and then extends nothwardly to the turnpike. Between the "right of way" and the turnpike, the passway is separated from the adjoining land by fences upon either side. There is no gate across the passway at the turnpike, nor where the passway enters upon the railroad "right of way," but there is a gate upon the south side of the "right of way" where it approaches the "right of way" from the Hall land. The passway is maintained entirely for the benefit of the Hall land. The appellant's sheep escaped from his premises, through a gate which had been inadvertently left open on to the Georgetown and Paris turnpike. They evidently went eastward along this pike until they came to where the Hall passway intersected it, when they turned south through this passway and went through it to the railroad "right of way," and there being no obstruction at that point, they got upon the railroad track and went westward upon it to near where a bridge crosses it, when they were overtaken by the train and killed. It is agreed that there was no negligence upon the part of those engaged in the operation of the train, and the sole question for decision is whether the point where the Hall passway intersects the railroad "right of way" was a point where the statute requires the erection of "cattle guards" to prevent cattle from wandering upon the railroad track.

It is conceded by every one that the common law imposed no duty upon a railroad company to erect and maintain "cattle guards." Peyton v. L. N. R. R. Co., 115 Ky. 53. Hence, in the absence of a statute imposing such a duty, no liability could attach to a railroad for failure to so do, and where a statute exists, the railroad could not be required to erect and maintain "cattle guards," except at the places designated by the statute. The stat-

ute prescribing the duty of railroad companies to erect and maintain "cattle guards" is section 1793, Ky. Stats., and is as follows: "That all corporations and persons owning or controlling and operating railroads as aforesaid shall erect and maintain cattle guards at all terminal points of fences constructed along their lines, except at points where such lines are not required to be fenced on both sides, and at public crossings. But where there is a private passway across said railroad the land owner, for whose benefit it is kept open, shall bear one-half the expense of cattle guards and gates, the former to erect the gates, the corporation or person operating the railroad to erect the cattle guards."

It will be observed that a corporation or person owning or controlling and operating a railroad is required by the statute to erect and maintain "cattle guards" at all crossings of public roads over the railroad, and at all terminal points of fences, where they are constructed on both sides along its lines. This necessarily includes a point where a private passway crosses the railroad, if it is a terminal point of the fences constructed along each side of the railroad. The language of the statute shows that it includes a private passway as one of the terminal points in the fences, alongside the railroad, as the statute requires the railroad company to erect at its own cost the "cattle guards" at public crossings, and at the terminals of fences constructed along the railroad other than where a private passway exists, but provides that where a terminal point is created by a private passway, the owner of the land for which the passway is maintained, and the railroad company shall bear the cost of erecting the "cattle guards" and gates equally. The statute requires the erection of the "cattle guards" at a private passway, if it constitutes a terminal in the fences where they are erected on each side of the railroad, parallel with it, as clearly as it requires their erection and maintenance at a public crossing, and the only difference which the statute indicates is that at the one the railroad company must bear the entire cost, while at the other the owner of the land, for which the passway is maintained, must bear one-half of the cost. The erection and maintenance of "cattle guards" at the points where a private passway crosses the railroad, and thereby creates a terminal in the fences which are constructed parallel with the railroad and along its right of way, may be as necessary for the protection of the cattle of the public, as they would

be at a public crossing, and the statute indicates no difference in the requirement for their erection and maintenance, at one or the other.   It is insisted for the appellee that the statute in regard to "cattle guards" only defines the mutual obligations of the land owner and the railroad, and does not create any right upon the part of any one, other than these, to complain of the failure to erect and maintain them.   This, however, we think is a construction of the statute which is too narrow, and the requirement that the "cattle guards" be erected and maintained at all terminal points of fences, along the railroad, must have a broader application than would be necessary as between the railroad company and the owner of the passway, since their erection and maintenance would very seldom be any more for the benefit of the passway owner than of the public.   In support of the theory that the statute defines only the mutual private obligations of the railroad company and the passway owner, it is suggested that where the railroad runs through the lands of a private owner, that it and the owner may dispense with lateral fences by agreement, in which state of case, the company would not be required to erect "cattle guards" and no one could complain.   This would be true, because there would be no terminal to lateral fencing, at which the "guards" should be maintained.   In McKee v. C., N. O. & T. P. Ry. Co., 102 Ky. 253, discussing the purpose of this statute, and the intention of the legislature in enacting it, it was said by the court: "Then no cattle guards will be needed, except at public and private crossings, and this the statute requires; and at terminal points in the parallel fencing along the right of way, and this is what the statute demands.   These points are not necessarily between the property lines of the various owners, but are wherever the lateral fencing, for any reason, stops and where from the want of 'cattle guards' at the stopping points the road under the fence would be left open for trespass.   Wherever the track leaves ground, which the company is bound to fence to pass on to ground which the company is not bound to fence, there must be cattle guards placed so as to completely fence the track."

It is true that by the terms of section 1795, Ky. Stats., and the construction placed upon it, and the other statutes relating to fences, it has been held that such statutes should all be construed together, and doing so that the same obligations only apply to a railroad company in regard to constructing fencing along its lines, as applies to

the adjoining land owner. Parrish v. L. & N. R. R. Co., 126 Ky. 638.   Further, it has been held that the owner of a private passway, over a railroad, could not require the latter  to erect and maintain "cattle guards" on each side of the passway in the absence of having offered to pay one-half of the cost of their erection and mainte-nance.   Peyton v. L. & N. R. R. Co., *supra.*   The reason for such holding is very evident.   It being the duty of the owner of the passway to contribute one-half of the cost of their construction, the railroad was not derelict in its duty to him, until he showed his willingness to per-form his own duty in the premises.   The failure of the owner of the passway to perform his part of the mutual obligations estopped him to complain of the railroad, but the appellant here was not under any duty to contribute to the erection or maintenance of the "cattle guards," and is not for that reason estopped to complain of the failure of the railroad company to perform its duty. The mutual obligations of the land owner, and of the rail-road company relating to fencing, and where there is no other persons interested in the fencing, cannot be extend-ed to apply to the state of case where "cattle guards" are required to be erected for the protection of the cattle of persons other than the owner of the passway.

The lands on either side of the railroad, approaching Hall's passway, were improved and cultivated lands, and a fence existed on either side of the railroad "right of way," which was a part of the fencing inclosing the im-proved lands.   These fences had a terminal at the pass-way.   There could be no question that under the fencing laws, either the railroad or the adjoining owners, had a right to require the fencing to be erected, at least it had been done.   No "cattle guards" or gates existed at the passway.   Any cattle which might be strolling could enter upon the railroad track at the terminal of the fences created by the passway.   The reason for requiring "cattle guards" existed here as fully as at a public crossing. The duty resting upon the railroad company and the owner of the land, for which the passway was maintained, to erect and maintain at such a place the appliances required by law, for the protection of wandering cattle, being mutual, neither can excuse himself against one of the pub-lic for failing to do what the statute required.   The rail-road company could have at least erected the "cattle guards" and required the owner of the passway to con-tribute his part of the cost.   Being of the opinion, there-

fore, that it was a duty which the railroad company owed to persons other than the owner of the passway, to erect and maintain the "cattle guards" at the place designated, the appeal is, therefore, granted and the judgment reversed and cause remanded for proceedings not inconsistent with this opinion.